**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

CAROLINA S. TRIMINIO and DAVID TRIMINIO, on behalf of themselves and all others similarly situated,

      Plaintiffs,

v.

PENNYMAC LOAN SERVICES, LLC
d/b/a PENNYMAC,

      Defendant.

Case No.: _____

_____

**CLASS ACTION COMPLAINT**

Plaintiffs, CAROLINA S. TRIMINIO and DAVID TRIMINIO, on behalf of themselves and all others similarly situated, allege violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq.* ("RESPA"), and the Florida Consumer Collection Practices Act § 559.72 ("FCCPA"), against Defendant PENNYMAC LOAN SERVICES, LLC ("PennyMac").

1. PennyMac is a servicer and lender for mortgage loans. PennyMac charged Plaintiffs $1,140 for "estimated" fees to reinstate his loan to avoid foreclosure. "Estimated" fees are fees companies expect to incur in the event that certain conditions take place, but have *not* actually incurred. The Eleventh Circuit has denounced "estimated" fees associated with reinstatement of loans to be a violation of the FCCPA and FDCPA.

2. PennyMac conceals the true nature of the fees by including unexplained estimated fees in form letters sent to borrowers stating the amount they must pay to reinstate their loan. By communicating fees that were not clear or conspicuous in response to Plaintiffs' request for information, PennyMac violated RESPA.

1

3. Hundreds of thousands of homes are in some stage of foreclosure in the United States every month. http://www.corelogic.com/research/foreclosure-report/national-foreclosure-report-january-2015.pdf. Most homeowners facing foreclosure are desperate to keep their homes and are willing to do close to anything to continue living in them with its families. Defendant exploits their desperation by placing them in danger of foreclosure if homeowners do not pay fees Defendant demands—including fabricated debt characterized as "estimated" fees in the reinstatement amounts.

4. PennyMac provides loans throughout the United States, including Florida. If a homeowner defaults on payments, PennyMac imposes certain conditions on homeowners to avoid foreclosure, including payment of PennyMac's attendant fees. Despite its contractual obligations in its uniform Mortgage Agreements and Notes to only charge actual fees allowed under applicable law, PennyMac leverages its position of power over homeowners facing foreclosure and demands payment of estimated fees not actually owed; that is, fees PennyMac projects to incur but has not actually incurred.

5. PennyMac factors these estimated fees into its total demand to homeowners and insists they are required to pay the full amount before PennyMac will reinstate their loans to avoid foreclosure. The Eleventh Circuit has found that demands for "estimated fees" associated with reinstatement of loans violate the FCCPA and the Fair Debt Collection Practices Act ("FDCPA") upon which the FCCPA is modelled.

6. Defendant must be held accountable for its actions. PennyMac knowingly violated the FCCPA and RESPA by demanding estimated fees.

## JURISDICTION AND VENUE

7. The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises out of RESPA, a federal statute.

8. The Court has supplemental jurisdiction over the FCCPA claims under 28 U.S.C. § 1367 because the basis of the RESPA federal claim involves the same debt collection practices that form the basis of the state claim.

9. The Court has personal jurisdiction because Defendant does business throughout the United States, including Florida. Further, its voluntary contact with Plaintiff to charge debts in Florida made it foreseeable that Defendant would be haled into a Florida court. *See Burger King Corp. v. Grudziadz*, 471 U.S. 462, 474 (1985).

10. Venue is proper in this District under 28 U.S.C. §§ 1391(b)-(c) because Defendant is deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced and because Defendant's contacts with this District are sufficient to subject it to personal jurisdiction.

## PARTIES

11. Plaintiff Carolina S. Triminio is a natural person who resides in Miami, Florida.

12. Plaintiff David Triminio is a natural person who resides in Miami, Florida.

13. Defendant PennyMac is a corporation with a principal place of business at 6101 Candor Drive, STE 200, Moorpark, CA 93021. PennyMac is a national mortgage lender.

## APPLICABLE LAW

14. The Florida Supreme Court liberally construes public protection statutes in favor of the public. *Samara Dev. Corp. v. Marlow*, 556 So. 2d 1097, 1100 (Fla. 1990).

3

**FCCPA**

15.     The FCCPA prohibits debt collectors from engaging in certain abusive practices in the collection of consumer debts. *See generally* Fla. Stat. § 559.72.

16.     The FCCPA's goal is to "provide the consumer with the most protection possible." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 (11th Cir. 2010) (citing Fla. Stat. § 559.552).

17.     Specifically, the FCCPA states that no person shall "claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." Fla. Stat. § 559.72(9).

18.     The FCCPA creates a private right of action under Fla. Stat. § 559.77.

19.     The FCCPA defines "consumer" as "any natural person obligated or allegedly obligated to pay any debt." *Id.* § 559.55(8).

20.     The FCCPA mandates that "no person" shall engage in certain practices in collecting consumer debt. *Id.* § 559.72. This language includes all allegedly unlawful attempts at collecting consumer claims. *Williams v. Streeps Music Co.*, 333 So. 2d 65, 67 (Fla. Dist. Ct. App. 1976).

21.     The FCCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." *Id.* § 559.55(6).

**RESPA**

22. RESPA imposes certain obligations on mortgage servicers to provide information to borrowers regarding their mortgage loans. 12 USC § 2605. In 2013, the CFPB enacted new regulations implementing specific provisions under RESPA and the Dodd-Frank Act concerning mortgage loan servicers including, but not limited to, certain requirements for responding to a written request for information concerning a borrower's mortgage loan. *See* 12 CFR § 1024.36 et seq.; Public Law 111-203, 124 Stat. 1376 (2010).

23. RESPA provides a private cause of action against a mortgage servicer for violations of the provisions of § 2605, if brought within three (3) years of the violation. 12 U.S.C. § 2614.

24. RESPA defines "servicer" as the "person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)." 12 U.S.C. § 2605(i)(3).

25. RESPA defines "servicing" as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).

26. Pursuant to RESPA, a servicer of a federally related mortgage loan "shall not … fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter." 12 U.S.C. § 2605(k)(1)(E).

27. RESPA's mortgage servicing regulations require a servicer to provide borrowers with required disclosures that are in writing and "clear and conspicuous." 12 CFR § 1024.32(a)(1).

28. RESPA and its implementing regulations should be broadly construed to effectuate their remedial purpose. *Friedman v. Maspeth Federal Loan and Sav. Ass'n*, 30 F. Supp. 3d 183, 187 (E.D.N.Y. 2014) ("The Act was designed to throw the federal judiciary's protective cloak over residential-occupant owners of real property and their kin to protect against abuse by banks during loan closings and subsequent related events. The Act should be broadly applied to accomplish its prophylactic purposes by exercising federal subject matter jurisdiction.").

**FACTUAL ALLEGATIONS**

29. On July 20, 2007, Plaintiffs purchased a home in Miami, Florida through a loan from Wells Fargo Bank, N.A., secured by a mortgage on the property. Copies of Plaintiffs' Mortgage Agreement and Mortgage Note are enclosed as Exhibit "A" and Exhibit "B" respectively. Plaintiffs made continuous payments but defaulted on the loan around June 1, 2015.

30. On June 22, 2013, Wells Fargo assigned its mortgage to Citibank, N.A., and on June 24, 2014, Citibank assigned the mortgage PennyMac. The assignments are enclosed as Exhibits "C" and "D".

31. In a letter dated September 11, 2015, PennyMac notified Plaintiffs that their loan had been in default since around June 1, 2015. The letter is enclosed as Exhibit "E."

32. In April 2016, Plaintiffs sent a written demand to PennyMac to request the amount that they would need to pay to reinstate their loan. The letter request is enclosed as Exhibit "F".

33. In a letter dated April 18, 2016, PennyMac advised Plaintiffs that if they wished to avoid foreclosure, they must comply with the requirements for reinstatement of its loan. The letter is enclosed as Exhibit "G."

34. The "total" funds "needed" to avoid foreclosure included $1,140 of "Estimated" charges, comprised of $810.00 for "Estimated Foreclosure Fees(s)" and $330.00 for "Estimated Foreclosure Cost(s)." The "estimated" amounts were based on projected amounts due in the event Plaintiff did not actually pay before a certain future date and certain events relating to foreclosure occurred. The letter states that the "foreclosure proceedings will continue and will not be stopped unless and until the reinstatement amount is *received in full* . . . before the receipt deadline" (emphasis added).

35. Despite not actually owing these estimated amounts, since a large percentage of the fees had not actually been incurred, PennyMac nonetheless demanded the full amount as immediately due.

36. PennyMac demanded that Plaintiffs pay these fees despite operating under strict servicing guidelines.

37. The "Servicing Guide," which PennyMac is obligated to comply with, requires that PennyMac "be aware of, and in full compliance with, all federal, state, and local laws (e.g., statutes, regulations, ordinances, administrative rules and orders that have the effect of law, and judicial rulings and opinions)." And "[a]s applicable law can change quickly, and sometimes without widespread notice, the seller/servicer must establish appropriate facilities for monitoring applicable legal developments and implementing appropriate measures to stay in compliance with applicable law. …" (emphasis added). *See* Fannie Mae Single Family Servicing Guide at A-2-1-08. (Exhibit "H").

38. The Servicing Guide only allows PennyMac to charge a homeowner for, *inter alia*, "***all expenses, including attorney fees; that were actually incurred*** in connection with the foreclosure proceedings that are permitted under the terms of the note, security instrument, and applicable law" for reinstatement of the loan (emphasis added). *Id* at E-3.2-08.

39. Despite PennyMac's specific prohibition, PennyMac nonetheless demanded that Plaintiffs pay the total amount due to reinstate their loan, including illegal "estimated" amounts.

40. Additionally, these demands were a direct breach of each of the following contract provisions, permitting *only* recovery of actual amounts due: (1) Paragraph 9 of the Mortgage Agreement permitted PennyMac recovery of "amounts *disbursed*" in protecting its interest and rights in the Mortgage Agreement (emphasis added); (2) Paragraph 14 of the Mortgage Agreement prohibited PennyMac from charging estimated fees, stating "[l]ender may not charge fees that are expressly prohibited in this Security Instrument or by Applicable Law"; (3) Paragraph 22 of PennyMac's Mortgage Agreement permitted it to collect "expenses *incurred* in pursuing" certain actions under the Paragraph which governed default, notice of default, actions to cure default, and reinstatement of loans (emphasis added); and (4) Paragraph 6(E) of PennyMac's Mortgage Note permitted it the "right to be *paid back* . . . for all of its costs and expenses in enforcing" the Note, which included "costs and expenses" (emphasis added).

41. By charging estimated fees tacked on to the reinstatement amount, Defendant frustrated Plaintiffs' ability to reinstate their loan.

42. In a remarkably similar case involving demands for "estimated" attorney's fees associated with loan reinstatement to avoid foreclosure, the Eleventh Circuit reversed the district court's grant of summary judgment on the FDCPA and FCCPA claims, opining, among other things, that the defendant had indeed falsely represented what the plaintiffs owed and that no

agreement expressly obligated the plaintiffs to pay these "estimated" fees. *See Prescott v. Seterus*, *Inc*., No. 15-10038, 2015 WL 7769235, at *2-6 (11th Cir. Dec. 3, 2015) ("[The defendant] violated the FDCPA and FCCPA by charging [the plaintiffs] estimated attorney's fees that it had not agreed to pay in the security agreement.").

43. Plaintiffs, through counsel, sent a cure letter to PennyMac on behalf of themselves and the putative class.

44. After a reasonable amount of time, Plaintiffs filed this lawsuit because PennyMac failed to cure the breach of its violations of state and federal law.

## CLASS REPRESENTATION ALLEGATIONS

### Florida Class 1

45. Plaintiffs bring this action under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following class of persons aggrieved by PennyMac's FCCPA violations ("Florida Class 1"), subject to modification after discovery and case development:

> All Florida residents to whom PennyMac charged, collected, or attempted to collect "estimated" reinstatement of loan amounts during the applicable statute of limitations.

### Florida Class 2

46. Additionally, Plaintiffs bring this action under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the following class of persons aggrieved by PennyMac's RESPA violations ("Florida Class 2"), subject to modification after discovery and case development:

> All Florida residents to whom PennyMac responded to a written request for information that included "Estimated" amounts during the applicable statute of limitations.

47. Class members are identifiable through Defendant's records and payment databases.

48. Excluded from the Class are Defendant; any entities in which it have a controlling interest; its agents and employees; and any Judge to whom this action is assigned and any member of such Judge's staff and immediate family.

49. Plaintiffs propose that they serve as class representatives for the Class.

50. Plaintiffs and the Class have all been harmed by the actions of Defendant.

51. Numerosity is satisfied. There are likely hundreds of class members. Individual joinder of these persons is impracticable.

52. There are questions of law and fact common to Plaintiffs and to the Class, including, but not limited to:

   a. Whether PennyMac violated the FCCPA by charging monies not due;

   b. Whether PennyMac violated the RESPA by failing to provide clear and conspicuous information in response to a written request for information;

   c. Whether Plaintiffs and class members are entitled to actual and/or statutory damages as a result of Defendant's actions;

   d. Whether Plaintiffs and the Class are entitled to attorney's fees and costs; and

   e. Whether Defendant should be enjoined from engaging in such conduct in the future.

53. Plaintiffs' claims are typical of the claims of class members.

54. Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class, they will fairly and adequately protect the interests of the Class, and they are represented by counsel skilled and experienced in class actions.

55. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of this controversy.

56. The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

### COUNT I AS TO PENNYMAC'S VIOLATIONS OF THE FLORIDA CONSUMER COLLECTION PRACTICES ACT § 555.72(9)
(Florida Class 1)

57. Plaintiffs incorporates by reference paragraphs 1 to 56 as if set forth fully herein.

58. Plaintiffs are "consumers" as defined by Fla. Stat. § 559.55(8) when they purchased their home by mortgage.

59. PennyMac is a "person" as stated in the FCCPA.

60. PennyMac knowingly attempted to enforce, claimed, and asserted a known non-existent legal right to a debt as defined by Fla. Stat. § 559.55(6) when PennyMac charged $1,140 for "expected" fees that were "needed" for reinstatement of the loan to avoid foreclosure. *Id.* § 559.72(9) (prohibiting collection, or attempts at collection, of debts known not to exist and prohibiting the assertion of a legal right known not to exist); *cf. Prescott v. Seterus, Inc.*, No. 15-10038, 2015 WL 7769235, at *2-6 (11th Cir. Dec. 3, 2015) (holding that charging "estimated" attorney's fees not agreed to in the mortgage agreement violated the FCCPA and FDCPA); *Bradley v. Franklin Collection Serv., Inc.*, 739 F.3d 606, 610 (11th Cir. 2014) (holding that certain fees violate the FDCPA where they are not supported by the language of the consumer agreement underlying the debt at issue); Fla. Stat. § 559.77(5) ("In applying and construing [the FCCPA], due consideration and great weight shall be given to the interpretations of the Federal

Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act.") (emphasis added).

61. PennyMac's acts of illegally attempting to collect a debt from Plaintiffs and deliberately charging $1,140 for "expected fees" not incurred constitutes a knowing violation of § 559.72(9) of the FCCPA.

62. As a result of its FCCPA violations, Plaintiffs suffered substantial damage, including but not limited to financial damage incurred from PennyMac's illegal billing practices.

### COUNT II AS TO PENNYMAC'S VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT 12 U.S.C. § 2605(k)
### (Florida Class 2)

63. Plaintiffs incorporates by reference paragraphs 1 to 56 as if set forth fully herein.

64. PennyMac is a "servicer" because it was responsible for "servicing" Plaintiffs' mortgage loan when it would receive scheduled periodic payments from Plaintiff pursuant to the terms of his mortgage loan and it made payments of principal and interest from those amounts under the terms of the loan. 12 U.S.C. § 2605(i)(3).

65. Plaintiffs' loan is a "federally related mortgage loan" because it is secured by a first or subordinate lien on residential real property designed for the occupancy of one to four families and was made in whole or in part by Wells Fargo, then Citibank, and now itself, acting as a lender that had deposits or accounts insured by the FDIC. 12 U.S.C. § 2602(1)(A),(B)(i).

66. As a servicer of a federally related mortgage loan, PennyMac must comply with any regulation implementing the provisions of RESPA. *See* 12 U.S.C. § 2605(k)(1)(E).

67. PennyMac violated § 2605(k)(1)(E) when it failed to provide information to Plaintiffs in a clear and conspicuous manner, as required by 12 CFR § 1024.32(a)(1), by charging "Estimated Foreclosure Fees(s)" and "Estimated Foreclosure Cost(s)" not owed and

demanding Plaintiffs pay these fees to reinstate their loan. *See* 12 CFR § 1024.32(a) ("A servicer shall comply with the requirements of this section for any written request for information from a borrower…")

68. As a result of PennyMac's RESPA violations, Plaintiffs suffered substantial damage, including but not limited to financial damage incurred because of PennyMac's illegal conduct.

**JURY DEMAND AND RESERVATION OF PUNITIVE DAMAGES**

69. Plaintiffs are entitled to and respectfully demands a trial by jury on all issues so triable.

70. Plaintiffs reserve the right to amend the Complaint and add a claim for punitive damages.

**RELIEF REQUESTED**

WHEREFORE. Plaintiffs, themselves and on behalf of the Class, respectfully request this Court to enter judgment against Defendant for all of the following:

a. That Plaintiffs and all class members be awarded actual damages, including but not limited to forgiveness of all amounts not owed;

b. That Plaintiffs and all class members be awarded statutory damages;

c. That Plaintiffs and all class members be awarded costs and attorney's fees;

d. That the Court enter a judgment permanently enjoining Defendant from charging, collecting, enforcing and/or attempting to enforce debt in violation of the FCCPA;

e. That, should the Court permit Defendant to continue charging, collecting, enforcing and/or attempting to enforce debt, it enter a judgment requiring Defendant to adopt measures to ensure FCCPA and RESPA compliance, and that

13

the Court retain jurisdiction for a period of six months to ensure that Defendant comply with those measures;

f. That the Court enter a judgment awarding any other injunctive relief necessary to ensure Defendant's compliance with the FCCPA;

g. That the Court enter an order that Defendant and its agents, or anyone acting on its behalf, are immediately restrained from altering, deleting or destroying any documents or records that could be used to identify class members;

h. That the Court certify Plaintiffs' claims and all other persons similarly situated as class action claims under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure; and

i. Such other and further relief as the Court may deem just and proper.

Dated: August 28, 2017    Respectfully Submitted,

*/s/ James L. Kauffman*
James L. Kauffman (Fla. Bar No. 12915)
BAILEY & GLASSER, LLP
1054 31st Street, Suite 230
Washington, DC 20007
Telephone: (202) 463-2101
Facsimile: (202) 342-2103
Email: jkauffman@baileyglasser.com

J. Dennis Card, Jr., (Fla. Bar No. 0487473)
Darren Newhart (Fla. Bar No. 0115546)
Consumer Law Organization, P.A.
2501 Hollywood Boulevard, Suite 100
Hollywood, Florida 33020
Telephone: (954) 921-9994
Facsimile: (305) 574-0132
E-mail: DCard@Consumerlaworg.com

Christopher Legg (Fla. Bar No. 44460)
Christopher W. Legg, P.A.

                                  3837 Hollywood Blvd., Suite B
                                  Hollywood, FL 33021
                                  Telephone: (954) 235-3706
                                  Facsimile: (954) 927-2451
                                  Email: ChrisLeggLaw@gmail.com

*Counsel for Plaintiff and the Putative Class*