**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION**

**CASE NO. 1:17-cv-23257-JEM**

**CAROLINA S. TRIMINIO and
DAVID TRIMINIO on behalf of
themselves and others similarly situated,**

        **Plaintiffs,**

**v.**

**PENNYMAC LOAN SERVICES, LLC
d/b/a PENNYMAC**

        **Defendant.**
_____/

## MOTION TO DISMISS WITH PREJUDICE

### I. INTRODUCTION

If a borrower stops making their monthly mortgage payments, the creditor can sue to foreclose the mortgage. A borrower can contractually stop the foreclosure by curing the non-payment default and paying the lender's fees and expenses. This is called reinstating the loan. Upon request, a creditor will send a borrower a letter identifying the amount needed to reinstate the loan as of a particular date. This is called a reinstatement quote.

This case bases on a reinstatement quote PennyMac sent to plaintiffs in April 2016. Plaintiffs' loan was in active foreclosure and they requested a reinstatement quote. In order to provide plaintiffs with the amount to reinstate through a future date, the quote included an estimate of the foreclosure fees and costs PennyMac expected it would incur through that future date. Plaintiffs complained including estimates violated the Florida Consumer Collection Practices Act. As required by their mortgage, they notified PennyMac and requested a cure: exclude estimates from the reinstatement quote.

PennyMac promptly cured by rescinding and replacing the reinstatement quote, removing all estimated fees and costs. Plaintiffs did not object to this cure. A year later, they filed this lawsuit. Because PennyMac took corrective action without further complaint from plaintiffs, pursuant to mortgage paragraph 20, this case is barred. Prejudicial dismissal is appropriate.

Even if the Court wants to indulge in plaintiffs' moot debate over the rescinded quote's propriety, a cursory review of it confirms PennyMac repeatedly explained the estimates projected expected future expenses, were not owed, and were provided for convenience only. PennyMac too confirmed estimates not incurred when the reinstatement payment was received would be returned. There was nothing unfair or misleading as a matter of law about these clear statements.

## II. COMPLAINT ALLEGATIONS[1]

Plaintiff David Triminio took out a mortgage loan with Wells Fargo Bank, N.A., to purchase real property in Miami-Dade County, Florida. (D.E. 25 (**Compl**.), Ex. B.) The loan is secured by the property. (*Id.*, Ex. A.) PennyMac Holdings, LLC was assigned the mortgage. (*Id.*, Exs. C-D.)

The mortgage provides:

> **19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued . . . . Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; . . . (c) pays all expenses incurred in enforcing this Security Instrument . . . and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. …
>
> **20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** … Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of this Security Instrument, until such Borrower or Lender has notified the other party . . . of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. …

---

[1] Except where noted, PennyMac accepts plaintiffs' allegations as true for purposes of this motion only.

2

(*Id.*, Ex. A ¶¶ 19-20.)   The note also provides:  "[i]f the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note . . . ."  (*Id.*, Ex. B ¶ 6(E).)

Plaintiffs failed to make their loan payments, and PennyMac sent them a default notice, describing the amounts needed to cure their default and avoid a foreclosure action.  (*Id.*, Ex. E.) Plaintiffs did not make this payment, and PennyMac Holdings, LLC filed a foreclosure action.  *See PennyMac Holdings, LLC v. Triminio, et al*, Case No. 2016-005859-CA-01 (Miami-Dade County Circuit Court, Florida; filed Mar. 8, 2016).

PennyMac sent plaintiffs their monthly mortgage statement, which provided the amount due to bring their account current and avoid foreclosure, inviting plaintiffs to contact PennyMac for the full reinstatement amount.  (Compl., Ex. F at 2.)

On April 6, 2016, plaintiff Carolina Triminio requested reinstatement figures.  (*Id.*, Ex. F.)

PennyMac responded on April 18, 2016.  (*Id.*, Ex. G.)  PennyMac's letter provided "what is needed to bring your account completely current through April 29, 2016."  (*Id.*)  The letter includes two lines for "Incurred" foreclosure fees and costs and two lines for "Estimated" foreclosure fees and costs.  (*Id.*)

The letter states:

> INFORMATION ABOUT FORECLOSURE
> **Foreclosure Proceedings Will Continue** — …
>
> Any pending foreclosure proceedings will continue and will not be stopped unless and until the reinstatement amount is received in full in our office on or before the receipt deadline.  Upon timely receipt of satisfactory funds, PennyMac will proceed to have any pending foreclosure action discontinued; however, you may have to arrange for the timely payment of any additional amounts incurred that are not reflected on this Statement or your loan may be returned to foreclosure processing.
>
> The foreclosure fees and costs reflected here may include both fees and costs already incurred and fees and costs projected or estimated to be incurred on or

3

> before the Good-Through date.  Upon receipt of your timely payment, we will determine the actual fees and costs due and unpaid at that time and will notify you if either additional fees and/or costs were incurred or if you are entitled to any refund of fees and/or costs projected or estimated but not actually incurred.

It goes on:

> INFORMATION ABOUT TOTAL DUE
>
> To provide you with the convenience of an extended Good-Through date, the Total Amount Due may include estimated or projected fees and costs, additional payments and/or escrow disbursements that will become due prior to the Good-Through date, but **which are not yet due as of the date this Reinstatement is issued**.  You will receive a refund if you pay the Total Amount Due and those projected and estimated fees, expenses or escrow disbursements have not actually been incurred.

(emphasis added).  And before explaining how to pay the total due to reinstate, PennyMac warns:

> ADDITIONAL INFORMATION
>
> The reinstatement amount indicated in this Statement is subject to change for various reasons, including but not limited to the following:
> …
> - Estimated or projected fees and costs may be incurred during the Good-Through date relating to foreclosure, bankruptcy, or other defaults on your loan.

Plaintiffs did not make the reinstatement payment.  Months later plaintiffs, through counsel, told PennyMac the quote violated Florida law "with regard to estimated reinstatement amounts" and provided an intended putative class complaint.  (*Id.* ¶ 43.)[2]  Plaintiffs invited PennyMac to make a "cure offer" within 20 days.  (*Id.*; *see also* Ex. 1.)

PennyMac timely responded.  (Compl., Ex. I.)  PennyMac rescinded the April 2016 quote and provided a new reinstatement quote that did not include any estimated fees or costs.  (*Id.*)

Over a year later, after the parties entered into a modification agreement and dismissed the foreclosure, and without further notice to PennyMac (*id.* ¶ 45), plaintiffs filed their threatened suit. Consistent with their proposed complaint from the year prior, plaintiffs claim the rescinded

---

[2] Plaintiffs reference the letter but do not include it as an exhibit to their complaint.  (Compl. ¶ 43.)  It is attached here as **EXHIBIT 1**.  The court may consider the notice in deciding this motion.  *See, e.g., Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

reinstatement quote violated the Florida Consumer Collection Practices Act, FLA. STAT. §§ 559.55, *et seq.* (**FCCPA**), and the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* (**RESPA**), because it included estimated fees and costs. (*See generally* Compl.)

### III. ARGUMENT

### Part I—PennyMac Cured

Plaintiffs' case bases entirely on the reinstatement quote PennyMac provided at plaintiffs' request so plaintiffs could exercise their contractual right to reinstate and avoid foreclosure. (Compl., Ex. A (¶ 19).) Paragraph 20's notice and cure provision applies. *See Sandoval v. Wolfe*, No. 16-cv-61856, 2017 WL 244111, at *3 (S.D. Fla. Jan. 19, 2017) (dismissing identical RESPA and FCCPA claims, in part, because the plaintiff failed to provide SunTrust with the "mandatory notice and opportunity to cure" before filing suit); *see also Deboskey v. SunTrust Mortgage, Inc.*, No. 8:14-cv-1778, 2017 WL 4083557, at *18 (M.D. Fla. Sept. 14, 2017) (notice required for similar RESPA claim). By inviting a cure (Compl. ¶ 43), plaintiffs concede this point.

PennyMac undisputedly took "corrective action" upon receiving notice. Plaintiffs' singular complaint was that, by including estimated fees and costs in the April reinstatement quote, PennyMac violated both FCCPA and RESPA. (*See generally* Ex. 1.) Once plaintiffs made their complaint and invited a cure, PennyMac took corrective action by rescinding the quote and providing a new reinstatement amount that did "not include any estimated or projected amounts." (*See* Compl., Ex. I.) With no response from plaintiffs for over a year (*id.* ¶ 45), PennyMac considered the issue resolved. Nothing more was required from PennyMac, and this case should be immediately dismissed. *See Pierson v. Ocwen Loan Servicing, LLC*, No. 16-cv-62840-BLOOM, 2017 WL 634164, at *3 (S.D. Fla. Feb. 16, 2017) (servicer cured basis for alleged RESPA violation through a pre-suit acknowledgment).

Plaintiffs attempt to avoid the dispositive impact of PennyMac's timely, corrective action, by suggesting that PennyMac's cure was somehow inadequate because it failed to address their "demands for statutory damages, reasonable attorney's fees and costs incurred, or injunctive relief . . . ." (*Id.*)  But plaintiffs notice says nothing about these demands.  (Ex. 1.)  It invites a cure response related to estimated fees and costs, which was completed.  To the extent plaintiffs believed PennyMac had not actually taken corrective action, it was incumbent upon them to tell PennyMac prior to filing suit.  To do so only in the filed complaint entirely defeats the purpose of the notice and cure provision, which is intended to allow PennyMac to avoid suit altogether.  *See, e.g., Mills v. Flagstar Bank*, No. 6:17-cv-294, 2018 WL 1050456, at *6 (E.D. Ky. Feb. 26, 2018) (confirming a meaningful purpose of the provision is to allow the parties to avoid litigation costs).

Corrective action also does not require PennyMac to speculate as to damages and to tender anything and everything a borrower may include in a potentially baseless proposed complaint, particularly as to unnamed borrowers in an uncertified class.  This case is a prime example why.  Despite never attempting to pay the reinstatement amount, plaintiffs' proposed complaint alleged they suffered "substantial financial damages," sought an unstated amount of fees and costs, sought "actual damages" on behalf of an uncertified class, and reserved jurisdiction for punitive damages.  Was PennyMac required to guess at these plaintiffs' non-specific damages and attorneys' fees or to self-identify all potential class members, guess at what their alleged actual damages were, and voluntarily pay that amount to a lawyer who did not even represent all of those people?  Of course not.  Taking corrective action is not an attempt to moot plaintiffs' claims or class.  Taking corrective action means taking reasonable steps to address the identified breach and avoid litigation altogether.[3]  Here that meant addressing these plaintiffs' issue with their particular reinstatement

---

[3] Even if the Court accepts that a paragraph 20 cure required PennyMac to not only remedy the alleged breach but to also redress claimed damages, plaintiffs' notice was clearly inadequate.  It failed to demand remedial action with any degree of specificity to enable PennyMac to cure.

6

quote. PennyMac did that, and plaintiffs' silence for over a year was proof that the steps PennyMac took were sufficient. This suit, seeking damages and class certification, based entirely on a rescinded reinstatement quote should be dismissed with prejudice.

## Part II—No Statutory Violation

**A.    No FCCPA Violation.**

    **1.    No debt collection.**

FCCPA "does not apply to every communication between a debt collector and a debtor." *Gburek v. Litton Loan Serv'g LP*, 614 F.3d 380, 385 (7th Cir. 2010).[4] Courts employ a "common sense inquiry" to determine whether the "animating purpose" of the letter is to induce payment. *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 172 (6th Cir. 2011). Where there is no implied or express demand for payment, the communications do not fall under FCCPA protection. *See, e.g., Kinlock v. Wells Fargo Bank, N.A.*, 636 F. App'x 785, 787 (11th Cir. Feb. 26, 2016).

Communications "sent in response to correspondence or an inquiry from a debtor are communications induced by the debtor and not the debt collector[;] . . . they do not fall within the ambit of [FCCPA]." *Dyer v. Select Portfolio Servicing, Inc.,* 108 F. Supp. 3d 1278, 1283 (M.D. Fla. 2015) (citing *Goodson v. Bank of Am., N.A.,* 600 F. App'x 422, 432 (6th Cir. 2015) ("[t]he October 7, 2011 letter, similarly, was sent not to induce payment, but rather to respond to Goodson's inquiry."); *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011) ("[T]he decisive point is that Leikin made the balance statements only after Grden called and asked for them."); *Bohringer v. Bayview Loan Servicing, LLC*, 141 F. Supp. 3d 1229, 1241 (S.D. Fla. 2015)  (response to inquiry not a debt collection attempt).

---

[4] Though *Gburek* was considering debt collection under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et. seq.* (**FDCPA**), in applying FCCPA, "due consideration and great weight shall be given to the interpretations of . . . the federal courts relating to the federal [FDCPA]."   FLA. STAT. § 559.77(5).

7

Plaintiffs admit they requested reinstatement figures and the reinstatement quote was sent in response. (Compl. ¶¶ 32-34.) The reinstatement quote too confirms it was sent in response to the request rather than an independent act to induce payment. (Compl., Ex. G at 1 ("In response to your request . . . ."). Any FCCPA claim based on this letter should be dismissed.

While the reinstatement quote did include a warning that the letter was an attempt to collect from a debt collector, the warning is not determinative and does not override the fact that the quote was reactive to plaintiffs' request for information rather than a proactive attempt to demand payment. *See, e.g., Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 399 (6th Cir. 1998) ("[T]he mere fact that the letter states . . . it 'is an attempt to collect a debt' does not transform the letter into an unlawful demand for payment. On the contrary, such a statement is required by the FDCPA."); *Hasbun v. Recontrust Co., N.A.*, 508 F. App'x 941, 942 (11th Cir. 2013) (intent to foreclose notice containing three *mini*-Miranda warnings was not an attempt to collect).

### 2. No violation.

Plaintiffs have not plausibly claimed a least sophisticated consumer would understand PennyMac was knowingly seeking an illegitimate debt or asserting a right that did not exist. *See* FLA. STAT. § 559.72(9) (prohibiting a person from "claim[ing], attempt[ing], or threaten[ing] to enforce a debt when such person knows that the debt is not legitimate, or assert[ing] the existence of some other legal right when such person knows that the right does not exist.").

Though the least sophisticated consumer is a low standard, it "preserv[es] a quotient of reasonableness" to prevent liability "for bizarre or idiosyncratic interpretations of collection notices." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010). And it charges plaintiffs both with reading the <u>entire</u> communication "with some care" and with "possess[ing] a rudimentary amount of information about the world." *Id.*; *see also Anselmi v. Shendell & Assocs., P.A.*, No. 12-61599-CIV, 2014 WL 5471111, at *2 (S.D. Fla. Oct. 29, 2014) ("Court must examine

8

each communication as a whole, and not by looking to each sentence individually because even the least sophisticated debtor is bound to read collection notices in their entirety.").

To reinstate the loan and stop the foreclosure, plaintiffs were required to cure their non-payment default, pay all of PennyMac's costs and expenses, and take whatever action PennyMac reasonably required to assure that PennyMac's interest and rights under the mortgage continued unchanged.  (Compl., Ex. A (¶ 19).)  Stated another way, to reinstate, plaintiffs must pay all fees, expenses, and costs incurred through the date PennyMac <u>received</u> the reinstatement payment.

Because PennyMac disclosed it was providing an estimated amount to reinstate into the future, which included estimated fees and costs not owed, and invited questions, there was no knowing claim to an "illegitimate" debt or assertion of a right that did not exist.  Plaintiffs could choose to make that payment, with the knowledge that overcharges would be returned, or they could not, running the risk that the loan would not be reinstated and the foreclosure not stopped.

A factual outline assists in confirming there is no claim here:

- Plaintiffs requested, <u>by mail</u>, "reinstatement figures."  (Compl., Ex. F.)
- At the time the request was made and the reinstatement quote was generated, there was ongoing litigation and fees and costs were continuously accruing.
- If plaintiffs' payment did not include all fees and expenses incurred by PennyMac in the ongoing litigation, PennyMac would not be required to reinstate the loan and stop the foreclosure.  (Compl., Ex. A (¶ 19) & Ex. B (¶ 6(D).).)
- PennyMac responded to the mailed request by placing a reinstatement quote in the U.S. Mail.  (Compl., Ex. G.)
- An item placed in the U.S. Mail does not reach its intended recipient on the say day it is mailed.  *See, e.g.,* Rule 6(d), F<small>ED</small>. R. C<small>IV</small>. P. (allowing 3 mailing days).

- Had PennyMac provided a reinstatement quote good through only the date it was created, it would be outdated by the time it would reach plaintiffs by mail, *i.e.*, the quote may not provide plaintiffs with the amount required to reinstate and stop the foreclosure.
- PennyMac provided plaintiffs with a reinstatement quote that was good through a date in the future. (Compl., Ex. G.)
- PennyMac explained to plaintiffs that it was providing a reinstatement quote good through a future date for plaintiffs' convenience. (Compl., Ex. G.)
- PennyMac explained to plaintiffs that, because it was providing a reinstatement quote good through a future date for plaintiffs convenience, the quote included "estimated or projected fees" "which are not yet due." (Compl., Ex. G.)
- PennyMac twice confirmed that, to the extent plaintiffs made the reinstatement payment and the estimated fees and costs were not incurred at the time the payment was received, plaintiffs would receive a refund of those amounts. (Compl., Ex. G.)
- PennyMac provided a phone number and invited questions. (Compl., Ex. G.)

The circumstances surrounding and a plain reading of the responsive reinstatement quote confirm as a matter of law that PennyMac was not acting abusively or demanding payment for fees it was not owed. PennyMac was acting entirely reasonably by mailing a prospective reinstatement quote that clearly explained to plaintiffs that estimated fees and costs were not owed and were included only for plaintiffs' convenience. (Compl., Ex. G.) PennyMac expressly told plaintiffs it would refund any overpayment as a result of the estimates. (*Id.*) With these facts clearly disclosed, plaintiffs could choose to make the payment, including the estimated fees and costs, call PennyMac with questions, or pay less that the estimated amount to reinstate, understanding that it may be insufficient to prevent reinstatement and foreclosure stoppage if fees and costs were incurred after the date the reinstatement quote was created.

This is markedly different from the reinstatement quote at issue in the unpublished *Prescott v. Seterus, Inc.*, 635 F. App'x 640 (11th Cir. 2015), decision, which, in addition to being non-binding, is not persuasive here. In *Prescott*, the panel found Seterus's inclusion of estimated fees and costs in its reinstatement quote violated FDCPA and <u>potentially</u> FCCPA. 635 F. App'x 644-46.[5] The Seterus reinstatement quote did not explain the estimated fees and costs at all. (*See* Ex. 2.) In fact, the *Prescott* panel confirmed that, while Seterus argued the estimated fees and costs were included only for the borrower's convenience, the "least sophisticated consumer could not have gleaned that from the reinstatement letter." 635 F. App'x at 645 n.5.

The opposite is true of PennyMac's reinstatement quote. While the quote does conclude plaintiffs must pay the full amount stated by the good through date, this one sentence on the last page of the quote does not override the 3 prior explanations regarding the estimated fees and costs, confirmation from PennyMac that those amounts were not owed as of the date the quote was generated, and prompt to call with questions. Any conclusion that a consumer charged with reading the entirety of the quote with some care would be misled by the quote would be the very kind of "bizarre" interpretation the Eleventh Circuit warned of in *Leblanc*. *Cf. Helman v. Bank of America*, 685 F. App'x 723, 727-28 (11th Cir. 2017) (express disclaimers that the bank was not collecting the debt from the borrower personally overrode other terms within the statements that indicate the letter was an attempt to collect personally).

### 3. Litigation immunity bars any FCCPA claim.

"[A]bsolute immunity must be afforded to any act occurring during the course of a judicial proceeding . . . so long as the act has some relation to the proceeding." *Levin, Middlebrooks, Mabie, Thomas, Mayes, Mitchell, P.A. v. United States Fire Ins. Co.*, 639 So. 2d 606, 608 (Fla. 1994). This includes "the doing of any act required or permitted by law in the due course of the

---

[5] A copy of the publically available reinstatement letter at issue in *Prescott* is attached as **EXHIBIT 2**.

11

judicial proceeding or as necessarily preliminary thereto." *Pledger v. Burnup & Sims, Inc.*, 432 So. 2d 1323, 1325-26 (Fla. 4th DCA 1983) (quotations omitted).

Florida's litigation immunity is absolute. It "applies across the board to actions in Florida, both to common-law causes of action, those initiated pursuant to a statute, or of some other origin." *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 384 (Fla. 2007); *accord Trent v. MERS, Inc.*, 618 F. Supp. 2d 1356, 1365 (M.D. Fla. 2007) (Florida's litigation immunity "precludes communications attached to or made part of a foreclosure complaint from forming the basis of a FCCPA or FDUTPA claim."), *aff'd*, 288 F. App'x 571 (11th Cir. 2008) ("Florida law also provides post-litigation immunity for any [filed] foreclosure action"); *Dyer v. Choice Legal Group, P.A.*, No. 5:15-cv-69, 2015 WL 3650925, at *2 (M.D. Fla. June 11, 2015) ("[t]he filing and maintenance of a legal action, such as an action in foreclosure, is precisely the kind of activity protected by Florida's litigation privilege").

A borrower's right to reinstate is a contractual right to have to enforcement of the mortgage "discontinued." (Compl., Ex. A (¶ 19).) In other words, "reinstatement" is only available after a loan has been accelerated through complaint filing. *See, e.g., Bartram v. U.S. Bank Nat'l Ass'n*, 211 So. 3d 1009, 1021 (Fla. 2016) (describing the contractual reinstatement right to stop acceleration and foreclosure). So PennyMac's response to plaintiffs' request for "reinstatement figures" during the course of the foreclosure proceeding necessarily related to that proceeding. The "INFORMATION ABOUT FORECLOSURE" section of the reinstatement quote confirms that to be the case. (*See* Compl., Ex. G.)[6]

---

[6] In making this argument, PennyMac recognizes Judge Dimitrouleas determined whether litigation immunity applied to the reinstatement quote at issue in *Sandoval* was a factual issue more appropriate for summary judgment. 2017 WL 244111, at *5. But where, as here, the facts as pled are irrefutable that the letter was related to the foreclosure proceeding, dismissal under litigation immunity is appropriate. *See, e.g., Montoya v. Nationstar Mortgage LLC*, 6:17-cv-1312, Doc. 38 at 22-23 (M.D. Fla. Jan. 19, 2018) (dismissing FCCPA claim as barred by Florida's litigation immunity where it was apparent from the face of the complaint that the breach letter was sent in relation to the foreclosure).

**B.     No RESPA Violation.**

Plaintiffs fail to state a RESPA claim because: **(1)** reinstatement quotes are not RESPA-required disclosures that fall under the "clear and conspicuous" requirement; and **(2)** the reinstatement quote was clear and conspicuous.

**1.     Responses to information requests are not subject to § 1024.32(a)(1).**

Even assuming reinstatement requests are RESPA-covered information requests, PennyMac complied with any response requirement by providing the requested information within the required timeframe. *See* 12 C.F.R. § 1024.36 (requiring only that the servicer provide the requested information in writing). The inquiry ends here.

Plaintiffs wrongly want to add that responses to information requests under 12 C.F.R. § 1024.36 must also be "clear and conspicuous" pursuant to 12 C.F.R. § 1024.32. But § 1024.32 applies only to "required" disclosures under subpart C. These required disclosures include the servicing transfer disclosure under § 1024.36(d) or the force-placed insurance disclosure under § 1024.37. Not responses to information requests under § 1024.36.

In responding under § 1024.36, a servicer must only provide a written explanation that includes the requested information—no particular disclosure is mandated. 12 CFR § 1024.36; *see also Bates v. JPMorgan Chase Bank, NA*, 768 F. 3d 1126, 1134-35 (11th Cir. 2014) (Chase's response was compliant; "[a]lthough Bates was confused and/or unsatisfied with this answer, the information provided an explanation to Bates as to what happened to her September payment and provided her with contact information for further support."). CFPB's interpretations too only use the "clear and conspicuous" requirement when discussing required disclosures rather than responses to information requests. *See* Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 78 FR 10696-01, at *10766, 10801, 10890 (applying this

13

requirement only when a servicer is supplying required disclosures, such as a QWR address the borrower must use), 2013 WL 525347 (Feb. 14, 2013).

### 2. Reinstatement was clear and conspicuous.

RESPA does not define the "clear and conspicuous" standard. The Truth in Lending Act's "clear and conspicuous" disclosure requirement means "a reasonably understandable form." *See* Official Interpretations to 12 C.F.R. § 1026.41(c) (discussing information to be included on the periodic mortgage statement). This is an objective standard. *See Whitton v. Security One Lending (Inc.)*, No. 1:14-cv-0161, 2015 WL 10891938, at *5 (N.D. Ga. Mar. 25, 2015) (citing *Zamarippa v. Cy's Car Sales, Inc.*, 674 F. 2d 877, 879 (11th Cir. 1982)). Because the language used to describe the required RESPA disclosures is similar, that same objective test should be applied here.

The reinstatement letter broke down the estimated fees and costs, three times confirmed those fees and costs were "projected or estimated," and confirmed they were not yet owed but were provided for plaintiffs' convenience to provide a future good through date. (*See* Compl., Ex. G.) The reinstatement was easily understood, and, as a matter of law, even if PennyMac should not have included the estimated fees and costs under FCCPA, did not violate RESPA. *See, e.g., Sandoval*, 2017 WL 244111, at *5 (reinstatement quote that expressly stated some amounts were estimates were "fully compliant with the formal and substantive requirements of RESPA" regardless of whether they may have also violated FDCPA or FCCPA); *see also Lorang v. Ditech Fin. LLC*, No. 16-CV-425-JDP, 2017 WL 3891802, at *4 (W.D. Wis. Sept. 5, 2017) (notice appearing in relatively short letter and in the same size font was clear and conspicuous).

In *Prescott*, even though the panel found Seterus demanded fees it could not lawfully receive under § 1692e(2), it confirmed Seterus did not falsely represent the character of the fees under § 1692e(2)(A) where Seterus "clearly separated the estimated fees from those already incurred and conspicuously marked those charges as 'estimated.'" 635 F. App'x at 645. "Even the

least sophisticated consumer would have understood that the estimated fees were just that—estimated." *Id.* If even the least sophisticated consumer could understand the character of the fees as a matter of law under Seterus's disclosures, this Court should similarly find as a matter of law that an objective consumer—a higher standard—could certainly understand the same following PennyMac's repeated, clear disclaimers regarding the estimated fees and costs. (Compl., Ex. G.)

## IV. CONCLUSION

PennyMac corrected any purported error within the disputed reinstatement quote over a year before this case was filed. This complaint should have never been brought.

There was no actionable error in the rescinded quote anyway. The estimates were adequately explained as not owed and provided for convenience. Prejudicial dismissal is requested.

**AKERMAN LLP**

*/s/ Celia C. Falzone*
Celia C. Falzone, Esq., Florida Bar No.: 0016439
Email: celia.falzone@akerman.com
50 North Laura Street, Suite 3100
Jacksonville, Florida 32202
Phone: (904) 798-3700; Fax: (904) 798-3730

*– and –*

William P. Heller, Esq., Florida Bar No.: 0987263
Email: william.heller@akerman.com
Marc J. Gottlieb, Esq., Florida Bar No.: 0827819
Email: marc.gottlieb@akerman.com
Las Olas Centre II
350 East Las Olas Blvd., Ste. 1600
Ft. Lauderdale, FL 33301
Phone: (954) 463-2700; Fax: (954) 463-2224

*– and –*

Eric S. Matthew, Fla. Bar No. 26539
Three Brickell City Centre
98 Southeast Seventh Street, Suite 1100
Miami, Florida 33131
E-Mail: eric.matthew@akerman.com
305-374-5600 (ph)/305-374-5095 (fax)

*Counsel for PennyMac Loan Services, LLC*

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on <u>March 23, 2018</u>, a true and correct copy of the foregoing has been furnished electronically by the CM/ECF system to: **Christopher W. Legg.,** Christopher Legg, P.A., 3837 Hollywood Blvd., Suite B, Hollywood, FL 33021; **Darren R. Newhart, Esq.,** Consumer Law Organization, P.A., 721 US Highway 1, Suite 201, North Palm Beach, FL 33408; **Jack Dennis Card , Jr., Esq.,** Consumer Law Organization, P.A., 721 US Highway 1, Suite 201, North Palm Beach, FL 33408; **James Lawrence Kauffman, Esq.,** Bailey & Glasser, LLP, 1054 31st Street, NW, Suite 230, Washington, DC 20007.

                                                                                    */s/ Celia C. Falzone*
                                                                                   Attorney